**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| In re:<br><br>JPK NEWCO, LLC,<br>*Debtor* | Bankr. Case No. 25-200 (ELG) |
| DEVELOPER RE1, LLC and<br>423 KENNEDY ST HOLDINGS, LLC,<br>*Appellants* | Civil Action No. 25-3250 (SLS)<br>Judge Sparkle L. Sooknanan |

**MEMORANDUM OPINION**

In this interlocutory appeal, Developer RE1, LLC and 423 Kennedy St Holdings, LLC appeal an order of the United States Bankruptcy Court for the District of Columbia denying their motion to dismiss JPK NewCo, LLC's Chapter 11 bankruptcy petition. This Court granted interlocutory review as to one question: whether the Bankruptcy Court applied the correct standard in determining whether JPK NewCo's petition should be dismissed for lack of good faith. The Court concludes that it did not. Because the Bankruptcy Court adopted an objective futility test that is more stringent than the Bankruptcy Code requires, the Court vacates and remands this case for further proceedings not inconsistent with this Memorandum Opinion.

### A. Factual Background

Before the Bankruptcy Court, the Parties stipulated to the Appellants' alleged facts and agreed to view "the facts and evidence most favorable to [them]" for the purpose of resolving the motion to dismiss. *In re JPK Newco, LLC*, No. 25-200, 2026 WL 1734986, at *1 (Bankr. D.D.C. June 12, 2026); JA 435. This Court, like the Bankruptcy Court, recites the record facts in the light most favorable to the Appellants without either making or reviewing any factual findings. *In re*

*JPK NewCo*, 2026 WL 1734986, at *1. As this case presents a pure question of law, the Court primarily recounts the facts to provide background of the underlying controversy.

In December 2021, an entity known as the WCP Fund made loans to the Appellants, which were memorialized by two promissory notes and secured by deeds of trust on certain real property. JA 173. In 2022, the WCP Fund sought to foreclose on the property, alleging that the loans were in default. JA 173–74. The Appellants challenged these foreclosures in the Superior Court of the District of Columbia, where they received concurrent interlocutory injunctions prohibiting the WCP Fund from foreclosing on the property. JA 174. In 2024, the WCP Fund and another entity undertook a complex transaction to form JPK NewCo. JA 173. Specifically, those entities contributed the promissory notes and assigned the corresponding deeds in the underlying property to JPK NewCo in return for a controlling membership interest in JPK NewCo. *Id.* As a result, the WCP Fund now holds an over 70% ownership stake in JPK NewCo. JA 186. JPK NewCo admits that it was founded "to either facilitate an amicable resolution to the pending litigation" in Superior Court or "as a mechanism of siloing troubled assets so as to remove those assets, and their accompanying putative liabilities, from the balance sheets" of the WCP Fund and its other owner through this Chapter 11 reorganization. JA 173; *JPK NewCo*, 2026 WL 1734986, at *2.

JPK NewCo's only assets are three unsecured promissory notes. *JPK NewCo*, 2026 WL 1734986, at *2. Two of those promissory notes are the underlying notes between the WCP Fund and the Appellants, which are contingent on the disputed claims arising out of Superior Court. *Id.* Its only other asset is an unsecured note payable from an entity known as Energy Morocco, LLC. *Id.* Following its formation, JPK NewCo borrowed $50,000, in part to fund the present litigation. JA 174. The balance of that $50,000 was lent to Energy Morocco, a note which became due on

December 2024. *Id.*; *JPK NewCo*, 2026 WL 1734986, at *2. JPK NewCo has demanded payment from Energy Morocco on the note but has not yet been paid. JA 174.

JPK NewCo initially filed a Chapter 11 petition in this District in July 2024, which resulted in the Superior Court trial being continued. Notice of Removal, *Developer RE1 LLC v. DP Capital, LLC*, 2022-CAB-5935 (D.C. Super. Ct. July 22, 2024). But that initial case was consensually dismissed. *JPK NewCo*, 2026 WL 1734986, at *2. JPK NewCo expended its remaining proceeds from the loan on costs arising from that earlier proceeding. JA 174. And on May 12, 2025, the case was remanded to Superior Court for further proceedings. Remand, *Developer RE1 LLC v. DP Capital, LLC*, 2022-CAB-5935 (D.C. Super. Ct. May 12, 2025).

On May 27, 2025, JPK NewCo filed another petition for Chapter 11 reorganization, *JPK NewCo*, 2026 WL 1734986, at *2, claiming insolvency because it expended its earlier loan proceeds in the prior litigation and has not yet collected on the Energy Morocco note, JA 174. The WCP Fund has made a capital contribution to fund JPK NewCo in the current reorganization. *Id.* The Appellants challenge whether JPK NewCo is even the proper holder of their underlying notes with the WCP Fund and the rights under the correlative deeds of trust. JA 175.

**B. Procedural Background**

The Appellants moved to dismiss JPK NewCo's Chapter 11 petition under 11 U.S.C. § 1112 as a bad-faith filing. The Bankruptcy Court recognized that there "is a split among the circuit courts on what standard to apply to determine whether a case was filed in bad faith" and that "there is no controlling precedent in the District of Columbia Circuit" on the question. *JPK NewCo*, 2026 WL 1734986, at *3. The Bankruptcy Court ultimately adopted the Fourth Circuit's *Carolin Corp. v. Miller*, 886 F.2d 693 (4th Cir. 1989), standard. Under that test, "movants [must] prove that a bankruptcy was filed with both objective futility (*i.e.*, whether a reorganization was

realistically possible) and subjective intent of bad faith" to warrant dismissal. *Id.* Applying *Carolin*, the Bankruptcy Court denied the Appellant's motion to dismiss and request for discovery. *Id.* The Appellants appealed, and this Court granted an interlocutory appeal. *See In re JPK Newco, LLC*, No. 25-cv-3250, 2026 WL 1911639 (D.D.C. July 2, 2026). The Court presumes familiarity with that Memorandum Opinion. *See id.* The instant appeal is fully briefed and ripe for review.

## LEGAL STANDARD

Federal district courts have appellate jurisdiction over judgments, orders, and decrees of bankruptcy judges under 28 U.S.C. § 158(a). District courts may affirm, modify, or reverse a bankruptcy court's judgment, or remand with instructions for further proceedings. Fed. R. Bankr. P. 8013. District courts review the bankruptcy court's findings of fact for clear error and its application of controlling law *de novo*. *See Allen v. Wells Fargo Bank Minnesota, N.A.*, 334 B.R. 746, 750 (D.D.C. 2005).

## DISCUSSION

In this interlocutory appeal, the Court agreed to consider a single question: "whether the Bankruptcy Court applied the correct standard in determining whether JPK NewCo's petition should be dismissed for lack of good faith." *JPK Newco*, 2026 WL 1911639, at *3. On that question, the Appellants argue that the Fourth Circuit's *Carolin* test adopted by the Bankruptcy Court is inconsistent with the Bankruptcy Code's good faith requirement. Meanwhile, the Appellees urge the Court to adopt *Carolin*. The Court agrees with the Appellants and vacates and remands this case to the Bankruptcy Court.

### A. For Cause Dismissal and Good Faith

Section 1112(b)(1) of the Bankruptcy Code authorizes courts to dismiss bankruptcy petitions "for cause." 11 U.S.C. § 1112(b)(1). Meanwhile, Section 1112(b)(4) of the Code articulates a list of examples of what "the term 'cause' *includes*[.]" *Id.* § 1112(b)(4) (emphasis

added).[1] Although bad faith "does not fall into one of the examples of cause specifically listed," nearly every circuit has held that "lack of good faith constitutes 'cause'" for dismissal under Section 1112(b)(1). *In re LTL Mgmt., LLC*, 64 F.4th 84, 100 (3d Cir. 2023); *see also In re Piazza*, 719 F.3d 1253, 1263 & n.5 (11th Cir. 2013) (collecting cases across the courts of appeal).[2]

The circuits reason that because the term "includes" is not "limiting" language when used in the Code, 11 U.S.C. § 102(3), the provision is not thought to "exclude other things otherwise within the meaning of the term," *Carroll v. Trump*, 49 F.4th 759, 768–69 (2d Cir. 2022) (Calabresi, J.) (quoting *Groman v. Comm'r Internal Revenue*, 302 U.S. 82, 86 (1937)). And in bankruptcy practice, the term "cause" is understood to extend to "prepetition bad-faith conduct." *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365, 373-74 (2007) (interpreting "cause" in an analogous provision of Chapter 13, 11 U.S.C. § 1307(c)); *see also id.* at 378 (Alito, J., dissenting) (describing Section 1112(b) as the Code's "express means to redress a debtor's bad faith").

**B. The Good-Faith Standard Across the Circuits**

Although "every court of appeals to address the issue" agrees that a filing not made in good faith should be dismissed, "[c]ourts have not been unanimous about what constitutes 'good faith' in the Chapter 11 filing context." *In re SGL Carbon Corp.*, 200 F.3d 154, 161 n.9, 165 (3d Cir.

---

[1] The list includes "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation," "gross mismanagement of the estate," "unauthorized use of cash collateral," "failure to comply with an order of the court," "failure timely to provide information or attend meetings," "failure to file a disclosure statement," and "material default by the debtor with respect to a confirmed plan," among others. 11 U.S.C. § 1112(b)(4).

[2] The Second Circuit has offered conflicting views on whether bad faith constitutes "cause" under Section 1112(b). *Contrast In re Tiana Queen Motel, Inc.*, 749 F.2d 146, 152 (2d Cir. 1984) ("The purpose of § 1112(b) is not to test a debtor's good faith; it is to provide relief where the debtor's efforts, however heroic, have proven inadequate to the task of reorganizing his affairs effectively within a reasonable amount of time."), *with In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1309 (2d Cir. 1997) ("A bankruptcy court may dismiss a bad faith filing on an interested party's motion or *sua sponte*" pursuant to Section 1112(b)).

1999). Most courts look to the "totality of facts and circumstances and determine where a petition falls along the spectrum ranging from the clearly acceptable to the patently abusive." *In re 15375 Mem'l Corp. v. Bepco, L.P.*, 589 F.3d 605, 618 & n.7 (3d Cir. 2009) (quoting *In re Integrated Telecom Express, Inc.*, 384 F.3d 108, 118 (3d. Cir. 2004)) (collecting cases); *see also In re C-TC 9th Ave. P'ship*, 113 F.3d 1304 (2d Cir. 1997) (using multi-factor test); *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986) ("Findings of lack of good faith . . . have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum."); *In re Laguna Assocs. Ltd. P'ship*, 30 F.3d 734, 738–39 (6th Cir. 1994) (noting that "good faith is an amorphous notion, largely defined by factual inquiry" where "no single fact is dispositive" (cleaned up)); *In re Marsch*, 36 F.3d 825, 828 (9th Cir. 1994) ("The existence of good faith depends on an amalgam of factors and not upon a specific fact.").[3] Under these tests, many circuits have held that the objective futility of reorganization is sufficient (but not necessary) to dismiss a Chapter 11 petition as a bad-faith filing. *See JPK Newco*, 2026 WL 1734986, at *3 nn. 26 & 27.

The Fourth Circuit, however, "applies a more comprehensive standard to a request for dismissal of a bankruptcy petition for lack of good faith[.]" *In re Bestwall LLC*, 71 F.4th 168, 182 (4th Cir. 2023). Under that standard, first articulated in *Carolin Corp. v. Miller*, "objective futility of any possible reorganization" is a necessary condition to dismiss a petition for bad faith—no matter the debtor's subjective intentions. 886 F.2d at 694, 700–01. "Although many courts cite *Carolin* for its holding that the Code contains an implicit good faith requirement, few courts outside the Fourth Circuit have adopted its rule that a case should not be dismissed where there is

---

[3] The Third Circuit also requires the debtor to be in "financial distress" for a Chapter 11 petition to be filed in good faith. *In re LTL Mgmt., LLC*, 64 F.4th 84, 101–04 (3d Cir. 2023).

a chance of reorganization." *In re Cedar Shore Resort, Inc.*, 235 F.3d 375, 380–81 (8th Cir. 2000). In fact, some courts have expressly rejected the *Carolin* approach. *See id.* at 381 ("[W]e decline to adopt the *Carolin* test and hold that a Chapter 11 petition may be dismissed for bad faith alone where the circumstances warrant."); *In re Phoenix Piccadilly, Ltd.*, 849 F.2d 1393, 1395 (11th Cir. 1988) ("The possibility of a successful reorganization cannot transform a bad faith filing into one undertaken in good faith."); *In re ECV Dev., LLC*, Nos. SC–06–1453–PaMkB, 06–02001, 2007 WL 7540960, at *9 (B.A.P. 9th Cir. June 15, 2007) ("We . . . also decline to make 'objective futility' a requisite factor in reviewing whether a chapter 11 case has been filed in bad faith."); *Bestwall*, 71 F.4th at 182 (The Fourth Circuit "applies a more comprehensive standard."). And "[n]o other court of appeals has accepted the *Carolin* rule that, in addition to other accepted bad faith factors, to obtain dismissal, a movant must show that no reorganization is possible." *ECV Dev.*, 2007 WL 7540960, at *9.

Even within the Fourth Circuit, some have criticized the *Carolin* test. *See Herlihy v. DBMP, LLC*, 167 F.4th 142, 154 (4th Cir. 2026) (King, J., dissenting) (arguing that *Carolin* should be limited); *In re Aldrich Pump LLC*, No. 20-30608, 2023 WL 9016506, at *27 (Bankr. W.D.N.C. Dec. 28, 2023) (suggesting the court "might well" have rejected *Carolin* "if writing on a clean slate" and doubting whether the 1989 "*Carolin* majority contemplated that its test would be employed to the cases of solvent, non-distressed corporations"); *cf. LTL*, 64 F.4th at 97–98 & n.8 (noting that the district court found that the debtor attempted a divisional merger and transferred liability to a new entity in an effort to "manufacture venue" in the Fourth Circuit because *Carolin* offered a "much more stringent standard for dismissal of a case for lacking good faith"). But *Carolin* remains good law in the Fourth Circuit. And the Supreme Court recently declined to address the split between the *Carolin* good-faith standard and the ones used by the other circuits.

*See Off. Comm. of Asbestos Claimants v. Bestwall LLC*, 144 S. Ct. 2519 (2024); *Esserman v. Bestwall LLC*, 144 S. Ct. 2520 (2024).

The D.C. Circuit has yet to adopt a standard for evaluating good faith. And there is not a uniform view of *Carolin* within the Circuit. For example, one court has criticized the test, observing that "no [other] court of appeals has held that the *Carolin* test actually applies":

> The lack of any realistic possibility for a reorganization is a basis for dismissal under express provisions of the Bankruptcy Code, and hopelessness of reorganization may be a sign of bad faith. [But] [t]he court of appeals in *Carolin* fell into the error of reasoning that the converse is true (if reorganization is not hopeless, then bad faith cannot exist), and failed to recognize that hopelessness of reorganization is but one subset of bad faith filings.

*In re Allen*, 300 B.R. 105, 124 nn. 30 & 31 (Bankr. D.D.C. 2003) (Teel, J.). In considering the Appellants' motion, the Bankruptcy Court adopted *Carolin* and declined to dismiss JPK NewCo's petition, reasoning that its chances for reorganization were not futile. *JPK Newco*, 2026 WL 1734986, at *5–6. It distinguished *Allen*'s criticism of *Carolin* because the petitioner there was "a serial Chapter 13 filer" and not a corporate entity filing under Chapter 11. JA 428.

**C. Analysis**

The Court is not convinced that *Carolin* set out the correct standard for good faith. The Court finds more persuasive those authorities that consider *Carolin* "too stringent." 7 *Collier on Bankruptcy* ¶ 1112.07 (Richard Levin & Henry J. Sommer eds., 16th ed. 2026).

Borrowing from Chapter 13 jurisprudence, the Supreme Court has clarified that the good faith filing requirement serves two purposes: (1) to ensure that the debtor is "a member of the class of 'honest but unfortunate debtor[s]' that the bankruptcy laws were enacted to protect," and (2) to empower "bankruptcy judges to take any action that is necessary or appropriate 'to prevent an abuse of process'" of the Code. *Marrama*, 549 U.S. at 374–75 (first quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991), and then quoting 11 U.S.C. § 105(a)). But the *Carolin* test furthers

neither of these goals and seemingly "misperceives the purpose of the good faith standard" altogether. *Cedar Shore Resort*, 235 F.3d at 381 (quoting 7 *Collier on Bankruptcy* ¶ 1112.07).

When looking at the class of debtors, courts commonly dismiss a petition for bad faith when "a petitioner has no need to rehabilitate or reorganize" because such a "petition cannot serve the rehabilitative purpose for which Chapter 11 was designed." *SGL Carbon*, 200 F.3d at 166. After all, "[t]he principal purpose of the Bankruptcy Code is to grant a 'fresh start' to [an] 'honest but unfortunate debtor.'" *Marrama*, 549 U.S. at 367 (quoting *Grogan*, 498 U.S. at 286–87). But under *Carolin*, "[t]he absence of financial distress ironically helps a debtor avoid a bad faith dismissal" because a debtor with no need to reorganize is still likely capable of a reorganization without resorting to liquidation (regardless of the debtor's actual intentions). *In re Bestwall LLC*, 658 B.R. 348, 379 n. 37 (Bankr. W.D.N.C. 2024) (suggesting this may be "a basis for the Fourth Circuit to reexamine its standard for good faith").[4] Ultimately, "'[g]ood faith' implies an honest intent and genuine desire on the part of the petitioner to use the statutory process to effect a plan of reorganization and not merely as a device to serve some sinister or unworthy purpose." *Metropolitan Realty*, 433 F.2d at 678. Since *Carolin* does not ensure that the debtor is among this "class of honest but unfortunate debtors," *Marrama*, 549 U.S. at 374, its doctrinal basis "embraces some significant difficulties," *Cedar Shore Resort*, 235 F.3d at 381 (cleaned up).

Further, the *Carolin* test limits rather than furthers the tools available to bankruptcy courts to "prevent an abuse of process" under the Bankruptcy Code. *Marrama*, 549 U.S. at 375 (cleaned up). As one circuit has explained:

> [Section] 1112(b) already permits "dismissal based on the lack of any realistic possibility of confirming a plan of reorganization, without any additional finding

---

[4] Although financial distress is a relevant consideration in the good-faith inquiry, the Court takes no position on whether an entity needs to be in financial distress in order to file in good faith. *See LTL Mgmt.*, 64 F.4th at 101.

> of bad faith." Requiring objective futility in addition to bad faith would "[thus] render the good faith doctrine a useless appendage to the statutory grounds listed in [Section] 1112(b)."

*Cedar Shore Resort*, 235 F.3d at 381 (quoting *Little Creek*, 779 F.2d at 1072). Thus, *Carolin* runs contrary to the Code's instruction that those statutory grounds not be construed as "limiting terms" but instead "support an expansive reading of § 1112(b)." *SGL Carbon*, 200 F.3d at 160 (citing 11 U.S.C. § 102(3)).

The good-faith standard is more properly informed by the "equitable nature of bankruptcy." *LTL*, 64 F.4th at 100 (citation omitted). In exercising these equitable powers,

> [i]t is easy to see why courts have required Chapter 11 petitioners to act within the scope of the bankruptcy laws to further a valid reorganizational purpose. Chapter 11 vests petitioners with considerable powers—the automatic stay, the exclusive right to propose a reorganization plan, the discharge of debts, etc.—that can impose significant hardship on particular creditors. When financially troubled petitioners seek a chance to remain in business, the exercise of those powers is justified. But this is not so when a petitioner's aims lie outside those of the Bankruptcy Code.

*SGL Carbon*, 200 F.3d at 166–67 (citing *In re Timbers of Inwood Forest Assocs., Ltd.*, 808 F.2d 363, 373 (5th Cir. 1987) (en banc)). The "good faith standard protects the jurisdictional integrity of the bankruptcy courts by rendering the[se] powerful equitable weapons (i.e., avoidance of liens, discharge of debts, marshalling and turnover of assets) available only to those debtors and creditors with 'clean hands.'" *In re Little Creek Dev. Co.*, 779 F.2d 1068, 1072 (5th Cir. 1986). After all, "bankruptcy relief is equitable in nature, and, as a general rule, equitable remedies are not available to any party who fails to act in an equitable fashion." *SGL Carbon*, 200 F.3d at 161 (quoting 7 *Collier on Bankruptcy* ¶ 1112–68).

"Every bankruptcy statute since 1898 has incorporated literally, or by judicial interpretation, a standard of good faith for the commencement, prosecution, and confirmation of bankruptcy proceedings." *Little Creek*, 779 F.2d at 1071. Because Congress did "not write 'on a clean slate'" when enacting "the present bankruptcy code in 1978," this "pre-code practice"

governing "ambiguous" concepts like cause and good faith "inform[s] our [modern] interpretation of the [C]ode" as well. *Harrington v. Purdue Pharma L.P.*, 603 U.S. 204, 223 (2024) (first citing *Hall v. United States*, 566 U.S. 506, 523 (2012); and then citing *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 649 (2012)). And pre-code bankruptcy practice understood the doctrine of "good faith" as requiring an equitable inquiry into "honesty of intention," *Barnes v. Whelan*, 689 F.2d 193, 200 (D.C. Cir. 1982) (cleaned up), not objective futility. As Justice Cardozo once explained:

> It is one thing for a creditor with claims against a corporation that is legitimately his debtor to invoke the aid of equity to conserve the common fund for the benefit of himself and of the creditors at large. Whatever hindrance and delay of suitors is involved in such a remedy may then be incidental and subsidiary. It is another thing for a debtor, co-operating with friendly creditors, to bring the corporation into being with the hindrance and delay of suitors the very aim of its existence. The power to intervene before the legal remedy is exhausted is misused when it is exercised in aid of such a purpose. Only exemplary motives and scrupulous good faith will wake it into action.

*Shapiro v. Wilgus*, 287 U.S. 348, 356–57 (1932) (citation omitted). Put differently, bankruptcy law

> would also be defective if it permitted the bankrupt to experiment with it,—to so manage and use its provisions as to conceal his estate, deceive or keep his creditors in ignorance of his proceeding, without penalty to him. It is easy to see what results such looseness would permit,—what preference could be accomplished and covered by it.

*Birkett v. Columbia Bank*, 195 U.S. 345, 350–51 (1904).

Rather than promote these equitable doctrines guarding against misuse or abuse of bankruptcy, the *Carolin* test hinders them by prohibiting the bankruptcy court from considering subjective intentions unless it finds that reorganization is futile. Because such a test limits rather than extends the bankruptcy court's "power to 'do equity and to mold each decree to the necessities of the particular case,'" the Court doubts that *Carolin* is a proper articulation of good faith. *Herlihy*, 167 F.4th at 155 (King, J., dissenting) (quoting *Hecht Co. v. Bowles*, 321 U.S. 321, 329 (1944)). Rather, the bankruptcy court must have "the power to sift the circumstances surrounding any claim

to see that injustice or unfairness is not done in the administration of the bankrupt estate." *In re Coastal Cable T.V., Inc.*, 709 F.2d 762, 764 (1st Cir. 1983) (Breyer, J.) (quoting *Pepper v. Litton*, 308 U.S. 295, 308 (1939)) (collecting cases). The Court must examine all surrounding "facts and circumstances to determine whether they support a finding of good faith." *SGL Carbon*, 200 F.3d at 162. "The possibility of a successful reorganization" alone cannot be dispositive. *Phoenix Piccadilly*, 849 F.2d at 1395.

The Bankruptcy Court found *Carolin* persuasive, reasoning in part that because "most, if not all, the [examples] of [Section] 1112(b)(4) are objective factors," the cause inquiry must be "primarily an objective" inquiry. JA 429. It further suggested that considering subjective good faith at dismissal would not be necessary because those motives may be considered at plan confirmation under Section 1129(a)(3) of the Code. JA 434–36. Having carefully reviewed the Bankruptcy Court's reasoned analysis set forth in the transcript of its oral ruling and its subsequent opinion memorializing it, the Court disagrees for three reasons.

*First*, the Bankruptcy Court relied heavily on the list of examples in Section 1112(b)(4) to suggest that the cause inquiry is necessarily an "objective" inquiry. JA 429. But such a reading contradicts the Code's explicit instruction that these examples, introduced by the word "includes," "are not limiting." 11 U.S.C. § 102(3). "Section 1112(b), by its terms, therefore, does not preclude" and in fact expects "consideration of unenumerated factors in determining" the meaning of "cause." *SGL Carbon*, 200 F.3d at 160.

*Second*, the Bankruptcy Court suggested that a subjective good-faith inquiry need not occur at the dismissal stage because it would later conduct that analysis at plan confirmation under Section 1129(a)(3) of the Code. JA 434–36. It is true that Section 1129(a)(3) requires a bankruptcy court to find that a "plan has been proposed in good faith and not by any means forbidden by law"

to confirm it. 11 U.S.C. § 1129(a)(3). But because that provision only asks whether the "plan has been proposed in good faith," *id.*, the focus of that inquiry "is *the plan itself*, and courts must look to the totality of the circumstances *surrounding the plan*." *In re McCormick*, 49 F.3d 1524, 1526 (11th Cir. 1995) (emphases added). At confirmation, the bankruptcy court asks only if "a plan will fairly achieve a result consistent with the objectives and purposes of the Bankruptcy Code." *In re Combustion Eng'g, Inc.*, 391 F.3d 190, 247 (3d Cir. 2004) (quoting *In re PWS Holding Corp.*, 228 F.3d 224, 242 (3d Cir. 2000)). It does not review "the subjective intent of the debtor." *In re Boy Scouts of Am.* (*Boy Scouts*), 137 F.4th 126, 157 n.15 (3d Cir. 2025). Put differently, the purpose of the Section 1129 good-faith requirement is to "provide[] an additional check on a debtor's intentional impairment of claims," *Combustion Eng'g*, 391 F.3d at 246, by "prevent[ing] a debtor-in-possession or trustee from effectively abrogating the creditor protections of Chapter 11," *In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143, 150 n.5 (3d Cir. 1986).

Unlike plan confirmation, the Bankruptcy Code's "for cause" dismissal provisions look to "prepetition conduct." *Marrama*, 549 U.S. at 373.[5] And that good-faith inquiry focuses on "conduct by the atypical litigant who has demonstrated that he is not entitled to the relief available to the typical debtor." *Id.* at 375 & n.11. So "while both inquiries concern the good faith of the debtor," they differ in that one looks to the party's conduct when initially filing for bankruptcy while the other raises "unique considerations about the treatment of creditors and the prospect of effectuating the Code's purposes" through confirmation of a specific plan. *Boy Scouts*, 137 F.4th

[5] Some courts have suggested that "post-petition misconduct by the debtor" prior to plan confirmation is also properly analyzed under Section 1112(b)'s "cause" standard. *See, e.g.*, *In re SGL Carbon Corp.*, 200 F.3d 154, 159 n.8 (3d Cir. 1999). But this Circuit has suggested that "debtor misconduct in the implementation or approval of the plan" should be examined at the plan confirmation stage. *Barnes v. Whelan*, 689 F.2d 193, 198 (D.C. Cir. 1982). Although both propositions are not mutually exclusive, the Court need not address this question as it is not presented by the circumstances in this case.

at 166 n.25. Accordingly, courts "have held [that] the question of whether a Chapter 11 bankruptcy petition is filed in good faith is . . . distinct from the statutory good faith requirement for confirmation pursuant to § 1129(a)(3)." *Id.* (quoting *In re Am. Cap. Equip., LLC*, 688 F.3d 145, 157 (3d Cir. 2012)). As one court has persuasively explained:

> Although it is true [a] proposed plan would be subject to a separate "good faith" determination by the bankruptcy court before it could implemented, *see* 11 U.S.C. § 1129(a)(3), that is only appropriate if the bankruptcy petition properly belongs before the bankruptcy court. In a case . . . where a debtor attempts to abuse the bankruptcy process, proceedings should end well before formal consideration of the plan.

*SGL Carbon*, 200 F.3d at 167 n.19 (citing *In re Metropolitan Realty Corp.*, 433 F.2d 676, 679 (5th Cir. 1970)).

*Third*, the Bankruptcy Court suggested that the good-faith standard for "cause" in Chapter 13 cases would necessarily differ from that "used when considering a motion to dismiss under Section 1112." JA 428. But "identical words and phrases within the same statute should normally be given the same meaning." *Monsalvo v. Bondi*, 604 U.S. 712, 726 (2025) (quoting *Powerex Corp. v. Reliant Energy Services, Inc.*, 551 U.S. 224, 232 (2007)). That rule of construction is "'doubly appropriate' where . . . Congress employed the same term in multiple places 'at the same time'" in the same law. *Id.* (quoting *Powerex*, 551 U.S. at 231–32). Since the "for cause" dismissal standards in Chapters 11 and 13 were enacted "contemporaneously" in 1978 with near-identical language, *Piazza*, 719 F.3d at 1263 (characterizing 11 U.S.C. §§ 1112(b), 1307(c)), "there is no significant distinction between Chapter 11 and Chapter 13 petitions with respect to the appropriate standard of review" for good faith, *SGL Carbon*, 200 F.3d at 159 n.7. *See also Piazza*, 719 F.3d at 1264 (noting that interpreting "for cause" to "mean something different" in some parts of the Code from "what it means elsewhere in the Bankruptcy Code would create unnecessary incoherence").

***

Accordingly, the Court concludes that the Bankruptcy Court did not apply the correct standard in determining whether JPK NewCo's petition should be dismissed for lack of good faith. Since the Bankruptcy Court focused only on the possibility of reorganization and failed to consider the other facts and circumstances presented by the Debtor's filing, the Court vacates and remands this case to the Bankruptcy Court for further proceedings not inconsistent with this Memorandum Opinion. Although courts have proffered different articulations of the totality-of-the-circumstances good-faith test, it would be premature for the Court to adopt a governing test now or opine on whether the Debtor's filing meets the good-faith requirement. The Court leaves it to the Bankruptcy Court to examine all the relevant facts and circumstances and determine whether bad faith conduct warrants dismissal of the petition in this case.

**CONCLUSION**

For all these reasons, the Court vacates the Bankruptcy Court's Order denying the Appellants' Motion to Dismiss and remands this case to the Bankruptcy Court for further proceedings not inconsistent with this Memorandum Opinion.

A separate order will issue.

SPARKLE L. SOOKNANAN
United States District Judge

Date: September 10, 2026